Jason P. Gonzalez (SBN 178768)
Neal J. Gauger (SBN 293161)
jgonzalez@nixonpeabody.com
ngauger@nixonpeabody.com
**NIXON PEABODY LLP**
One California Plaza
300 S. Grand Avenue, Suite 4100
Los Angeles, CA 90071
Telephone: 213.629.6000
Facsimile: 213.629.6001

Attorneys for Plaintiffs
ACLU OF SOUTHERN CALIFORNIA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACLU OF SOUTHERN CALIFORNIA,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, a component of the Department of Homeland Security,<br><br>Defendant. | CASE NO. 19-7774<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>FREEDOM OF INFORMATION ACT<br>5 U.S.C. § 552 |

Plaintiff, the ACLU of Southern California ("ACLU SoCal" or "Plaintiff"), brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the United States Department of Homeland Security ("DHS") and the United States Immigration and Customs Enforcement ("ICE") (collectively, "Defendants") to (1) seek the release of all reports and audits ("ICE Reports") prepared by the Detention Standards Implementation Initiative ("DSII") of the American Bar Association's ("ABA") Commission on Immigration from 2008 to present; and (2) enforce Plaintiff's right to a waiver of fees for organizations that seek the production of public records sought in the public interest.

## JURISDICTION AND VENUE

1. This Court has federal subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). Because this action arises under federal law against an agency of the United States, this Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331.

2. Venue lies in this district pursuant to 28 U.S.C. §§ 1391(e)(1) and 4 U.S.C. § 552(a)(4)(B).

## PARTIES

3. Plaintiff is a non-partisan, non-profit public interest organization whose mission is to defend and secure the individual liberties and rights set out by the Constitution and Bill of Rights, including the rights of immigrants. Since at least the late-1970s, Plaintiff has monitored and responded to the federal government's immigration actions. A significant aspect of Plaintiff's advocacy and public education work is the dissemination of information to the public through a variety of means, including the procurement and release of public information regarding the detention of immigrants.

4. Plaintiff frequently shares its information with the news media, and its staff members serve as regular commentators in local and national print, radio, television, and internet news media. Plaintiff also disseminates information to the

public electronically through its website (www.aclusocal.org), social media, weekly action alert emails to its members, and video and audio pieces about civil liberties issues.  Further, the organization issues reports documenting civil liberties issues, sends out newsletters to its members, and produces "Know Your Rights" documents, briefing papers, fact sheets, and other educational and informational materials.  Plaintiff's staff members regularly conduct "Know Your Rights" workshops for members of the public; speak on civil liberties issues at public events and conferences; and testify before local, state and federal bodies.

5. Defendant DHS is a United States government entity charged with ensuring the safety and security of the United States.  DHS has oversight pertaining to federal preparations to deal with terrorism and other emergency management, and, through ICE, management of customs, border security, trade, and immigration.  DHS has possession, custody, and control of the records that Plaintiff seeks.

6. Defendant ICE is a component of the Department of Homeland Security and is responsible for enforcing federal laws governing border control, customs, trade and immigration.  ICE is an "agency" within the meaning of 5 U.S.C. § 552(f)(1).  ICE has possession, custody, and control of the records that Plaintiff seeks.

## STATUTORY BASIS FOR CLAIM

7. The Freedom of Information Act, 5 U.S.C. § 552 *et seq.*, mandates disclosure of records held by a federal agency in response to a request for such records by a member of the public, unless records fall within certain narrow statutory exemptions.

8. "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  Through access to government

information, FOIA helps the public better understand the operations of the government, thereby enabling a vibrant and functioning democracy.

9. Any member of the public may make a request for records to an agency of the United States under FOIA. To ensure public access to materials subject to FOIA, 5 U.S.C. section 552 contains provisions requiring that fees associated with record requests be waived or reduced under certain circumstances, including where the "disclosure of the information is in the public interest," such as upon a request made by "public interest watchdog groups" such as Plaintiff. 5 U.S.C. § 552(a)(4)(A)(iii); *Inst. for Wildlife Prot. v. U.S. Fish & Wildlife Serv.*, 290 F. Supp. 2d 1226, 1232 (D. Or. 2003) "The legislative history ... demonstrates that Congress intended independent researchers, journalists, and public interest watchdog groups to have inexpensive access to government records in order to provide the type of public disclosure believed essential to our society."

10. FOIA provides that an agency shall furnish documents without charge or at a reduced charge if disclosure of the information is in the public interest because it "is likely to contribute significantly to public understanding of the operations or activities of the government," and is "not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). *See also* 6 C.F.R. § 5.11(k) (DHS six-factor test for evaluating request for public interest fee waiver).

11. Requests for fee waivers are to be "liberally construed in favor of waivers for noncommercial requesters." *Fed. CURE v. Lappin*, 602 F. Supp. 2d 197, 201 (D.D.C. 2009) (citation and quotations omitted).

12. An agency that receives a FOIA request must respond in writing to the requestor within twenty business days after the receipt of such request. 5 U.S.C. § 552(a)(6)(A)(i). In its response the agency must inform the requester whether or not it intends to comply with the request (which might include a fee waiver or fee reduction request), provide reasons for its determination, and inform the requestor of her right to appeal the determination. *Id.*

## STATEMENT OF FACTS

13. On January 9, 2018, Plaintiff filed a FOIA request ("Request") with Defendants seeking the release of all ICE Reports from 2008 to present. Specifically, it requested the release of any and all records relating to or concerning inspections, audits, and reports prepared by the DSII of the ABA's Commission on Immigration regarding immigration detention centers from 2008 to present, including but not limited to any finalized reports or audits, drafts of reports or audits, and any response or communication by ICE or any contractor operating an immigration detention facility regarding any final or draft reports or audits prepared by the ABA. A true and correct copy of this Request is attached hereto and incorporated herein as **Exhibit A**.

14. As Plaintiff explained in its Request, since 2001, the ABA has conducted inspections and prepared reports regarding immigration detention centers in the United States. These reports are prepared as part of the ABA's larger mission to increase access to justice and humane treatment for men and women in immigration detention. Defendants publicly published the ABA's ICE Reports from 2001 to 2008 at https://www.ice.gov/foia/library, doing so after being spurred by a three-year FOIA lawsuit filed by the National Immigrant Justice Center (NIJC) in 2006. *See* National Immigrant Justice Center, *Department of Homeland Security Releases Immigration Detention Inspection Reports*, https://www.immigrantjustice.org/press_releases/department-homeland-security-releases-immigration-detention-inspection-reports (July 8, 2009).

15. Defendants' prior acquiescence in producing the 2001 to 2008 ICE Reports demonstrates that there is no basis for Defendants to oppose the release of the post-2008 ICE Reports.

16. The ABA has continued to conduct inspections and issue reports during the period from 2008 to present. For example, in approximately 2014, the ABA completed an ICE Report regarding the Adelanto Detention Facility, a

contract detention center operated by GEO Group ("GEO") in Adelanto, California.  On information and belief, this report has never been made public.

17. Through its pending Request, Plaintiff seeks to inform the public on a matter of vital public concern and interest: the treatment of immigrants, including asylum seekers, in the care and custody of the federal government.  The ICE Reports from 2008 to present will present a much-needed independent assessment of ICE's detention standards and conditions, which govern the treatment of immigrants in federal custody.  The public is entitled to know what has been revealed by the ABA's independent reporting on the federal government's detention facilities over the past decade, including the ABA's assessment as to whether federal detention standards have been properly followed.

18. Disclosure of the ICE Reports to the public is particularly critical in light of (1) the significant, public, and general interest in how immigrants are treated within federal immigration facilities; and (2) the existence of multiple, repeated, and widespread violations of detainees' rights and detention centers' failure to comply with detention standards.  *See, e.g.* Paloma Esquivel, *"We don't feel OK here": Detainee deaths, suicide attempts, and hunger strikes plague California immigration facility*, L.A. Times (Aug. 8, 2017), http://www.latimes.com/local/lanow/la-me-ln-adelanto-detention-20170808-story.html; DHS OIG, *Management Alert on Issues Requiring Immediate Action at the Theo Lacy Facility in Orange, California* (OIG-17-43-MA), https://www.oig.dhs.gov/sites/default/files/assets/Mga/2017oig-mga-030617.pdf (Mar. 6, 2017); Nixon Peabody LLP, *To Live and Law in LA: Inside an immigrant detainee camp*, https://www.buzzsprout.com/150281/839488-inside-an-immigrant-detainee-camp (Oct. 24, 2018).

19. Compliance with governing standards is a matter of life and death; in several cases, the federal government's failure to comply with detention standards has resulted in the deaths of immigrants in federal custody, including the deaths of

minor children.  *See, e.g.* CBS Los Angeles, *Exclusive: Report Blames Detainee's Death On Immigration Center's Medical Staff* (Feb. 24, 2014), http://losangeles.cbslocal.com/2014/02/24/exclusive-report-blames-detainees-death-on-immigration-centers-medical-staff/; ICE Office of Detention Oversight, *Compliance Inspection, Adelanto Correctional Facility*, http://www.ice.gov/doclib/foia/odo-compliance-inspections/adelantoCorrectionalFac_Adelanto-CA-Sept_18-20-2012.pdf; Miriam Jordan, *8-Year-Old Migrant Child From Guatemala Dies in U.S. Custody*, N.Y. Times (Dec. 25, 2018), https://www.nytimes.com/2018/12/25/us/guatemalan-boy-dies-border-patrol.html.

20. Public disclosure of the ICE Reports from 2008 to present is further necessitated by the apparent and admitted failure of the federal government to monitor detention facilities and comply with required standards.  On June 28, 2018, the Department of Homeland Security's Office of the Inspector General ("DHS-OIG") revealed that regular inspections performed by private contractors and ICE's Office of Detention Oversight "do not ensure adequate oversight or systemic improvements in detention conditions, with some deficiencies remaining unaddressed for years." DHS-OIG, *ICE's Inspections and Monitoring of Detention Facilities Do Not Lead to Sustained Compliance or Systematic Improvements* (OIG-18-67), https://www.oig.dhs.gov/sites/default/files/assets/2018-06/OIG-18-67-Jun18.pdf (June 26, 2018).

21. The DHS-OIG report further found that ICE's Office of Detention Oversight inspectors only inspected 33 out of 211 federal detention facilities in 2017 – a rate where each facility would only be inspected every three years.  *Id.* at p. 3.  Where private contractors were utilized by ICE to perform inspections, DHS-OIG observed that some inspectors declared standards were being met despite only reviewing written policies – these inspectors never observed whether the written policies were actually being followed.  *Id.* at p. 6-7.  Private contractor

- 6 -
**COMPLAINT**
4847-3037-3540.2

inspectors also failed to follow their own inspection protocols, asking detainees about conditions of confinement "in the presence of detention facility personnel," selecting detainees for interviews by asking first if they spoke English, and then proceeding to conduct interviews only in the English language. *Id.* at p. 8.

22. Most egregiously, the DHS-OIG report found that some detention facilities willfully defied and violated required detention standards:

> "A detention standard requires the facility to allow detainees to help other detainees voluntarily and free-of-charge prepare legal documents. In addressing a deficiency in this area, the facility responded that it did not permit such assistance, stating, 'It is the policy of the [facility] not to allow inmates/detainees to assist others with their legal issues . . . The [facility] chooses not to change its policy regarding the issues noted' . . . several facilities continue to strip search all incoming detainees without establishing reasonable suspicion, as required by detention standards.  Even when inspections documented this as a deficiency, the facilities continued routine strip searches of detainees during intake without proper documentation. Other examples of repeat deficiencies include facilities failing to notify ICE about alleged or proven sexual assaults."

*Id.* at p. 12-13.

23. Indeed, as recently as January 29, 2019, the DHS-OIG issued a scathing report about ICE's failure to monitor and ensure its contractors' compliance, documenting "thousands of instances of the facilities' failures to comply with detention standards." DHS-OIG, *ICE Does Not Fully Use Contracting Tools to Hold Detention Facility Contractors Accountable for Failing to Meet Performance Standards* (OIG-19-18), https://www.oig.dhs.gov/sites/default/files/assets/2019-02/OIG-19-18-Jan19.pdf. (January 19, 2018), p. 1.  Rather than pursue corrective action or financial penalties against non-compliant contractors, DHS-OIG revealed that ICE has routinely "issued waivers to facilities with deficient conditions," despite having "no formal

policies and procedures to govern the waiver process," and "allow[ing] officials without clear authority to grant waivers." *Id.*

24. In sum, the sheer volume and intensity of widespread media coverage, governmental reporting, public outrage and debate, and known violations regarding the rights and treatment of immigrants in detention plainly demonstrate an overriding public interest in disclosure of the ICE Reports from 2008 to present.

25. Despite the fact that disclosure of the ICE Reports from 2008 to present is plainly in the public interest, and despite the fact that Defendants have previously disclosed ICE Reports from 2001 through 2008, Defendants have failed to satisfy Plaintiff's FOIA request since it was made over a year and a half ago – far longer than the twenty business days prescribed by 5 U.S.C. § 552(a)(6)(A)(i).

26. Other than a cursory acknowledgement e-mail on January 10, 2018, Defendants did not substantively respond to Plaintiff's January 9, 2018 FOIA request until February 15, 2018. When ICE did respond, it represented that it would "make every effort to comply with [Plaintiff's] request in a timely manner." A true and correct copy of ICE's February 15, 2018 response to Plaintiff's FOIA request is attached hereto and incorporated herein as **Exhibit B**.

27. No further communications were received from Defendants until April 13, 2018, when DHS-OIG provided a letter to Plaintiff, stating that Plaintiff's FOIA request would "necessitate a thorough and wide-ranging search," and "estimat[ing] a response to [Plaintiff's] request to be provided within 30 business days." DHS-OIG further represented that it would "make every effort to comply with [Plaintiff's] request in a timely manner," and that DHS-OIG "ha[d] not yet made a decision on [Plaintiff's] request for a fee waiver." A true and correct copy of DHS-OIG's April 13, 2018 response to Plaintiff's FOIA request is attached hereto and incorporated herein as **Exhibit C**.

28. On May 11, 2019, Defendants provided a "first interim response" to Plaintiff's Request, producing a cover letter and 1,643 pages of Bates numbered

1  records from ICE.  A true and correct copy of Defendants' May 11, 2019 cover
2  letter is attached hereto and incorporated herein as **Exhibit D**.
3      29.    The records produced by Defendants to date fall woefully short of the
4  scope of records named in the Request; indeed, many fall outside the scope of the
5  Request.  Defendants' production of records once again demonstrates Defendants'
6  ability to fully comply with Plaintiff's request, and that their choice to withhold the
7  post-2008 ICE Reports is a willful and intentional violation of federal law.

## COUNT I:  VIOLATION OF FOIA

9      30.    Plaintiff re-alleges and incorporates by reference the allegations in
10 each of the preceding paragraphs of this Complaint.
11     31.    Defendants have violated FOIA by failing to produce the full ICE
12 Report records from 2008 to present that are responsive to Plaintiff's January 9,
13 2018 request.
14     32.    Plaintiff and the public have been and will continue to be irreparably
15 harmed until Defendants are ordered to comply with Plaintiff's FOIA request.

## PRAYER FOR RELIEF

17 WHEREFORE, Plaintiff respectfully requests that this Court:
18     1.    Declare Defendants' failure to comply with FOIA to be unlawful;
19     2.    Enjoin Defendants from continuing to withhold from the public the
20 ICE Report records responsive to Plaintiff's FOIA request: specifically, any and all
21 records relating to or concerning inspections, audits, and reports prepared by the
22 DSII of the ABA's Commission on Immigration regarding immigration detention
23 centers from 2008 to present, including but not limited to any finalized reports or
24 audits, drafts of reports or audits, and any response or communication by ICE or
25 any contractor operating an immigration detention facility regarding any final or
26 draft reports or audits prepared by the ABA;
27     3.    Order Defendants to produce the ICE Report records without further
28 delay;

4. Enjoin Defendants from assessing fees or costs for processing of Plaintiff's FOIA request;

5. Award Plaintiff its costs and reasonable attorney's fees incurred in this action as provided by 5 U.S.C. § 552(a)(4)(E); and

6. Grant Plaintiff such other and further relief as this Court may deem just and proper.

Dated: September 9, 2019

JASON P. GONZALEZ

NEAL J. GAUGER

*/s/ Jason P. Gonzalez*

Attorneys for Plaintiff
ACLU OF SOUTHERN CALIFORNIA